**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

TESLA, INC., a Delaware corporation,

        Plaintiff,

v.

RUTH JOHNSON, in her official capacity as
Secretary of State and Chief Motor Vehicle
Administrator, BILL SCHUETTE, in his
official capacity as Attorney General, and
RICK SNYDER, in his official capacity as
Governor,

        Defendants.

_____/

Case No. 16-cv-01158

Hon. Janet T. Neff

Hon. Ellen S. Carmody

**TESLA, INC.'S CONSOLIDATED BRIEF
OPPOSING MOTION TO QUASH AND
SUPPORTING MOTION TO COMPEL
PRODUCTION OF LEGISLATOR
DOCUMENTS**


**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.      State constitutional and statutory provisions involving process on and discovery from state legislators do not apply in federal court.................................. 2

    II.    The State must produce any documents reflecting communications with third parties or disclosed to third parties, because these documents are not privileged. . 3

    III.   The State must also produce relevant documents that do not involve communications with, or disclosure to, third parties. ............................................ 3

    IV.   If the legislators will not produce the requested documents, then the State Defendants must do so. ............................................................................................. 9

    V.    Service of the legislator subpoenas was consistent with Federal Rule 45. ........... 10

CONCLUSION ................................................................................................................. 10

CERTIFICATE OF SERVICE ........................................................................................ 12

i

# TABLE OF AUTHORITIES

Page

**Cases**

*American Beverage Assoc. v. Snyder*,
  735 F.3d 362 (6th Cir. 2013) ................................................................... 5

*Asgeirsson v. Abbott*,
  696 F.3d 4541 (5th Cir. 2012) ................................................................. 8

*Baldus v. Brennan*,
  2011 WL 6122542 (E.D. Wis. 2011) .................................................... 3, 4

*Benisek v. Lamone*, __ F.3d __,
  2017 WL 412490 (D. Md. Jan. 31, 2017) ...................................... 2, 4, 6, 8

*Bethune-Hill v. Virginia State Bd. of Elections*,
  114 F. Supp. 3d 323 (E.D. Va. 2015) ..................................................... 2, 4, 6

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*,
  520 U.S. 5648 (1997) .............................................................................. 7

*Caudill v. Hollan*,
  431 F.3d 900 (6th Cir. 2005) ................................................................... 6

*Comptroller of Treasury of Maryland v. Wynne*,
  135 S. Ct. 1787 (2015) ............................................................................ 7

*Craigmiles v. Giles*,
  312 F.2d 2204 (6th Cir. 2004) ................................................................ 5

*Dep't of Revenue of Ky. v. Davis*,
  553 U.S. 328 (2008) ............................................................................... 6

*Everson v. Leis*,
  556 F.3d 4843 (6th Cir. 2009) ................................................................ 9

*Favors v. Cuomo*,
  285 F.R.D. 187 (E.D.N.Y. 2012) ....................................................... 2, 3, 6, 7

*Gravel v. United States*,
  408 U.S. 6065 (1972) ............................................................................. 3

*In re NTL, Inc. Secs. Litigation*,
  244 F.R.D. 179 (S.D.N.Y. 2007) ............................................................ 9

Page

*Matthews v. Jones*,
  35 F.3d 10469 (6th Cir.1994) ...................................................................... 9

*N.L.R.B. v. Sears Roebuck & Co.*,
  421 U.S. 1324 (1975) ................................................................................. 3

*Nashville Student Organizing Committee v. Hargett*,
  123 F. Supp. 3d 967 (M.D. Tenn. 2015) ........................................... 2, 3, 4

*Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*,
  511 U.S. 93 (1994) ....................................................................................7

*Page v. Virginia State Bd. of Elections*,
  15 F. Supp. 3d 657 (E.D. Va. 2014) ............................................... 5, 6, 8

*Perez v. Perry*,
  2014 WL 106927 (W.D. Tex. Jan. 8, 2014) ...................................... 2, 3, 4

*Perez v. Perry*,
  2014 WL 1796661 (W.D. Tex. May 6, 2014) ...................................... 9, 10

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970) ................................................................................... 5

*Rochester Gas & Elec. Corp. v. Pub. Serv. Comm'n of State of N.Y.*,
  754 F.2d 99 (2d Cir. 1985) ........................................................................ 6

*Rodriguez v. Pataki*,
  280 F. Supp. 2d 89 (S.D.N.Y. 2003) ................................................. 2, 3, 4

*Trammel v. United States*,
  445 U.S. 40 (1980) .................................................................................... 3

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
  550 U.S. 330 (2007) ................................................................................... 5

*Rosie D. v. Romney*,
  256 F. Supp. 2d 115 (D.Mass.2003 ............................................................ 9

*Shell Global Solutions (US) Inc., v. RMS Eng'g, Inc.*,
  2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) ............................................. 9

*United States v. Gillock*,
  445 U.S. 360 (1980) ........................................................................ 2, 8, 10

Page

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
  2016 WL 5922315 (W.D. Tex. Oct. 11, 2016) .......................................................... 5

**Statutes**

Fed. R. Civ. P. 26 ............................................................................................................ 4

Fed. R. Civ. P. 45(b)(1) ................................................................................................. 10

**Rules**

Mich. Comp. Law § 4.553 ............................................................................................... 3

Mich. Comp. Law § 4.554 ............................................................................................... 3

Fed. R. Evid. 501 ............................................................................................................ 2

## INTRODUCTION

Tesla, Inc., filed suit to challenge a newly enacted law that targeted Tesla by prohibiting manufacturers from selling cars directly to Michigan consumers. The law began as HB 5606, a bill that had nothing to do with direct sales (instead, it protected car dealers' ability to charge customers non-vehicle related fees). The bill remained unchanged for months and had passed all requisite committee review. Then, on October 1, 2014, Senator Hune (who counts among his top contributors the Michigan Automobile Dealers Association, and whose wife's firm lobbies for the dealers) introduced a floor substitute (substitute S-1) that added the language to bar direct sales. *Just one day later*—with no debate or public scrutiny—the Legislature passed what is commonly called the Anti-Tesla Amendment. This prohibition is unconstitutional because it is a purely protectionist measure intended to insulate Michigan-based automotive dealers and manu-facturers from competition, supported by no rational bases as applied to Tesla.

To demonstrate the law's protectionist motivation, Tesla seeks certain documents reflect-ing communications about Tesla and the Anti-Tesla Amendment. Tesla initially asked the State Defendants to produce legislator documents reflecting these communications.[1] Counsel for the State Defendants objected and said that although the documents were located on State computer servers, Tesla would have to serve third-party document subpoenas on individual legislators to obtain the discovery. So Tesla served subpoenas on Senator Hune and Representative Sheppard. The legislators now contend that Michigan state laws prohibit Tesla from obtaining legislative discovery. But those laws *do not apply in federal court*. Federal common law governs legislative discovery in federal court, and under that law, the documents Tesla seeks must be produced. Tesla asks the Court to deny the motion to quash and grant Tesla's motions to compel.

---

[1] Because this is an *Ex Parte Young* lawsuit, the State Defendants functionally *are* "the State," and there is no dispute "the State" has responsive documents in its possession.

## ARGUMENT

**I.** **State constitutional and statutory provisions involving process on and discovery from state legislators do not apply in federal court.**

In a federal-court proceeding, state legislators do not get the benefit of state constitutional provisions or statutes addressing process or legislative privilege. Instead, federal common law applies. Fed. R. Evid. 501 (federal common law "governs a claim of privilege" in a federal-question case); *see generally* 3 Weinstein's Federal Evidence § 501.02[2]b] (1997) (federal privilege law applies in federal question cases, not the law of the forum state). Thus, federal courts look to the common law – not state law – to determine the scope of legislative privilege. *E.g., Nashville Student Organizing Committee v. Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015) ("whether the Legislators enjoy immunity or privilege is a matter of federal common law, not a matter of federal or state constitutional law") (citing *United States v. Gillock*, 445 U.S. 360, 374 (1980)); *Perez v. Perry*, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) ("The legislative privilege is governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence."); *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012) ("The legislative privilege is governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence."); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 93–94 (S.D.N.Y. 2003) (availability of legislative privilege "presents a question of federal common law").

As a result, federal courts routinely compel state legislators to provide documents and deposition testimony over objections exactly like those presented here. *E.g., Benisek v. Lamone*, __ F. Supp. 3d __, 2017 WL 412490, at *4 (D. Md. Jan. 31, 2017) (compelling non-party state legislators to testify at deposition and produce documents); *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) (compelling production of legislative documents in part); *Nashville*, 123 F. Supp. 3d at 969–72 (denying motion to quash state legislator depositions); *Veasey v. Perry*, 2014 WL 1340077, at *4 (S.D. Tex. April 3, 2014) (compelling

2

production of legislative documents); *Baldus v. Brennan*, 2011 WL 6122542, at \*3 (E.D. Wis. Dec. 8, 2011) (compelling production of legislative documents); *Rodriguez*, 280 F. Supp. 2d at 102–03 (compelling legislative discovery except for "actual deliberations of the Legislature").[2]

The legislative privilege, like all evidentiary privileges, must be "strictly construed" and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980)). As explained below, there is no legislative privilege at all for documents reflecting communications with third parties or disclosed to third parties. And even for purely internal legislative documents, the privilege is qualified, not absolute, and may be overcome by a showing of need. *Nashville*, 123 F. Supp. 3d at 969; *Rodriguez*, 280 F. Supp. 2d at 100; *Perez*, 2014 WL 106927, at \*2. Tesla can make that showing of need here (*see* Part III below).

## II.  <u>The State must produce any documents reflecting communications with third parties or disclosed to third parties, because these documents are not privileged.</u>

Like all privileges, the legislative privilege can be waived by communication with or disclosure to third parties. Waiver need not be explicit, but "may occur either in the course of the litigation when a party testifies as to otherwise privileged matters, *or when purportedly privileged communications are shared with outsiders.*" *Favors*, 285 F.R.D. at 211-12 (emphasis added).

---

[2] Because federal law governs this discovery dispute, there is no need to examine the irrelevant state-law protections on which the legislators rely. But even a Michigan state court would reject these arguments, which are principally based on an *amicus* brief that Tesla's counsel filed *in a state-court proceeding* involving requests for communications in legislative deliberations, information Tesla does not seek. For example, Mich. Comp. Law § 4.553 only prohibits subpoena of legislator statements made "pursuant to his or her duty as a legislator," a Speech or Debate Clause prohibition that extends only to legislative deliberations. *See, e.g., Gravel v. United States*, 408 U.S. 606, 625 (1972). *Accord, e.g., N.L.R.B. v. Sears Roebuck & Co.*, 421 U.S. 132, 150–54 (1975) (same limited scope for the deliberative-process privilege). Similarly, Mich. Comp. Law § 4.554 protects the "legislative files, recordings, tapes, records, memoranda, or written documents of a member of the legislature . . . ." The protection does not extend to communications with an outside person or to documents disclosed to third parties.

*Accord Perez*, 2014 WL 106927, at *2 ("To the extent that any individual asserting the privilege has had communications or correspondence with any outside party or entity, such communications or correspondence waives the privilege as to the content."); *Baldus*, 2011 WL 6122542, at *2 ("The Legislature has waived its legislative privilege to the extent that it relied on . . . outside experts for consulting services.").

Here, there can be no privilege claim regarding legislative documents describing or evidencing communications with third parties (such as lobbyists or associations) or legislative documents disclosed to third parties. As with any civil discovery privilege, such communications and disclosures constitute a waiver of the privilege. There is no ground for either the legislators or the State Defendants to object to production of these requested documents.[3]

### III.   The State must also produce relevant documents that do not involve communications with, or disclosure to, third parties.

For legislative documents where the privilege has not been waived, the privilege is qualified, as noted above, and the duty to produce turns on the weight of the parties' respective interests. Federal courts apply a five-part balancing test: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of government in the litigation; and (5) the privilege's purposes. *E.g., Benisek*, __ F. Supp. 3d __, 2017 WL 412490, at *2; *Bethune-Hill*, 114 F. Supp. 3d at 328; *Nashville*, 123 F. Supp. 3d at 970; *Rodriguez*, 280 F. Supp. 2d at 101. These factors uniformly support compelling production of the requested documents here.

_First_, the requested documents are relevant because they will shed light on the ban's purpose. Emails among Michigan legislators or between legislators and the executive branch, for

---

[3] Indeed, under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery of any non-privileged matter that is relevant to any party's claim or defense. Here, the contested documents are relevant because they will shed light on the purpose behind the ban, which relates directly to Tesla's arguments under the dormant Commerce Clause as explained in detail below.

example, are likely to show the protectionist motive that undergirds the Anti-Tesla Amendment. And the State's motive in enacting the Anti-Tesla Amendment is pertinent to Tesla's dormant Commerce Clause claim, *American Beverage Ass'n. v. Snyder*, 735 F.3d 362, 369–70 (6th Cir. 2013) (state law is *per se* invalid if it "purposefully" discriminates against out-of-state interests), and Tesla's due-process and substantive-due-process claims, *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) (statute is unconstitutional if enacted with a purpose to "protect[ ] a discrete interest group from economic competition").

In particular, the legislative motive will determine what level of scrutiny the Court applies in evaluating Tesla's dormant Commerce Clause challenge. If Tesla can prove the Anti-Tesla Amendment was motivated by "simple economic protectionism," then the law will be "subject to a virtually *per se* rule of invalidity, which can only be overcome by a showing that the State has no other means to advance a legitimate local purpose." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338–39 (2007). If not, Tesla may still seek to show that the law imposes a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Either way, the legislative materials are relevant. *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 2016 WL 5922315, at *6 (W.D. Tex. Oct. 11, 2016) (in dormant Commerce Clause case, "legislators' statements to lobbyists or constituents are relevant to determining legislative purpose"); *Page v. Virginia State Bd. of Elections*, 15 F. Supp. 3d 657, 666 (E.D. Va. 2014) ("Obviously, any documents containing the opinions and subjective beliefs of legislators or their key advisors would be relevant to the broader inquiry into legislative intent.").

The legislators and State Defendants have argued that their dates of employment and the date of enactment of the statute are reasons to resist production. Not so. The State Defendants are responsible for responding to discovery requests on behalf of the State and their respective

offices regardless of whether the information requested preceded their employment in those offices. *Caudill v. Hollan*, 431 F.3d 900, 914 (6th Cir. 2005) (A "suit against a person in his or her official capacity is a suit against the office and not the person"). And even if their claim that the law was merely a clarification were true – which demonstrably it is not – Tesla would still be entitled to know why the Amendment was passed.

_Second_, there is no other available source for this evidence. Legislative communications and related documents provide unique insight into legislative intent. *Benisek*, 2017 WL 412490, at *2 (publicly available materials provided "no meaningful substitute" for legislative documents); *Bethune-Hill*, 114 F. Supp. 3d at 340-41; *Page*, 15 F. Supp. 3d at 666–67. And these legislative documents are not part of the public record; when not disclosed to a third party, Tesla has no other way to obtain the information contained therein. *Favors*, 285 F.R.D. at 219 ("To the extent that the information sought by the plaintiffs relates to non-public, confidential deliberations that occurred . . . between legislators, their staffs, and retained experts, such information likely cannot be obtained by other means."). What Tesla *does* know is that, under pressure from the local dealer's lobby, the Legislature enacted a ban on Tesla's direct-to-consumer sales model, giving local franchised dealers a state-sponsored monopoly on car sales within Michigan. This ban was enacted in 24 hours, with no public notice or comment. Tesla is entitled to discovery into this secret process.

_Third_, this litigation is not a mere business dispute. Michigan's ban violates Tesla's constitutional rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and also violates the Commerce Clause by discriminating against out-of-state vehicle manufacturers in favor of Michigan-based companies. Statutes that so discriminate are unconstitutional unless they can meet the strictest scrutiny. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008); *Rochester Gas & Elec. Corp. v. Pub. Serv. Comm'n of State of N.Y.*,

754 F.2d 99, 105 (2d Cir. 1985) (economic protectionism is the "'most serious concern' of the Commerce Clause"). Applying strict scrutiny ensures that states cannot impede the free flow of goods and display "the tendencies toward economic Balkanization" that were of "central concern" to the framers. *Comptroller of Treasury of Md. v. Wynne*, 135 S. Ct. 1787, 1794 (2015).

Thus, the ban threatens an economic policy – "the free flow of interstate trade" – that is central to our Constitution. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 107 (1994). Indeed, it would do so even if it inured to the benefit of Michigan's citizens to the detriment of the national economy. *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 578 (1997) (economic protectionism "may include attempts to give local consumers an advantage over consumers in other States"). But Michigan's ban does not even do that; it favors auto dealers at the expense of Michigan consumers by preventing consumers from buying products within the state from an out-of-state manufacturer like Tesla.

For those reasons, this case is not simply about a business that "disapproves of a statute." Hune Br. at 6. The case implicates a fundamental tenet of our Constitution that affects the national economy and harms consumers and out-of-state businesses alike. Such broad-ranging impact warrants the legislative discovery Tesla requests.

*Finally*, factors four and five look to the government's role and the privilege's purpose. The government's role is unquestioned, a point the legislators concede while asserting, without support, that the significant involvement of the government weighs against discovery. Courts disagree. *E.g., Favors*, 285 F.R.D. at 219 ("[T]he state government's role in the instant litigation is direct, and the motives and considerations behind the 2012 Senate and Assembly Plans, to a large degree, are the case. Hence, the fourth factor also weighs against issuance of a protective order."). As for the privilege's purpose, courts have explained that state legislative privilege is an "outgrowth of the doctrine of legislative immunity" and that the primary purpose

7

of the privilege is "to effectuate th[at] immunity." *Page,* 15 F. Supp. 3d at 665; *see Benisek*, __

F. Supp. 3d __, 2017 WL 412490, at *3. Thus, where legislators are not subject to liability, the

need for privilege protection decreases and, arguably, evaporates: "The absence of the threat of

personal monetary liability reduces significantly, and perhaps even eliminates, the justification

for state legislative immunity." *Benisek*, __ F. Supp. 3d __, 2017 WL 412490, at *3. Here, of

course, Tesla seeks documents from legislators who are at no risk of individual liability.

More fundamentally, federal courts recognize protections such as immunity and privilege

for state legislators as a principle of comity. *Gillock*, 445 U.S. at 370. However, "federal

interference in the state legislative process is not on the same constitutional footing with the

interference of one branch of the Federal Government in the affairs of a coequal branch." *Id.* So

the legislators are wrong to claim that federal law offers "[a]nalogous protections for state

legislators" to those extended to federal lawmakers. Rather, in cases "where important federal

interests are at stake, . . . comity yields." *Id.* at 373. This is such a case.

There is also a strong public policy in favor of transparency and disclosure of govern-

ment records. *Asgeirsson v. Abbott*, 696 F.3d 454, 461 (5th Cir. 2012) ("Transparency is

furthered by allowing the public to have access to government decisionmaking."). That is

especially true in the context of suspect, protectionist legislation. Even the legislators agree

there are circumstances where public interests could be relevant, *e.g.,* Hune Br. at 5, and courts

have held that inconvenience to legislators is not a compelling reason to quash. *Benisek*, __ F.

Supp. 3d __, 2017 WL 412490, at *3 ("inconvenience . . . minor [when compared] to

vindicat[ing] fundamental constitutional rights"). Tesla is entitled to documents that evidence

the intent and coordination that took place behind the scenes when the Legislature effectively

gave franchised dealers a state-sponsored monopoly on car sales within Michigan – all while

engineering the legislative process to steadfastly remove any public attention or scrutiny.

In sum, all five factors point to the conclusion that there is no applicable legislative privilege here. And again, as to the legislators' communications with and disclosures to third parties, any privilege would in any event be waived.

**IV.     If the legislators will not produce the requested documents, then the State Defendants must do so.**

Depending on who one asks, the documents are either in the control and custody of the legislators, of the Attorney General, or both. To cover all the bases, Tesla has appropriately submitted requests to both the State Defendants and the legislators. As for the State Defendants, Tesla has sued the Michigan Governor, Attorney General, and Secretary of State in their official capacities. "'[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent.'" *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009). "'[O]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994). So Tesla's suit is effectively against the State of Michigan as an entity, *not* against the three State Defendants as individuals. As a result, Tesla's discovery requests are *also* directed to the State of Michigan as an entity, not merely to the three State Defendants as individuals.

The State must produce documents it controls, and "a party can 'control' documents . . . within the possession or custody of a non-party." *Perez v. Perry*, 2014 WL 1796661, at *1 (W.D. Tex. May 6, 2014) (citing *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007) (neither legal ownership nor physical possession required for "control"); *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D.Mass.2003) (state officials had "control" over documents in non-party state agency's possession). A party has control "'when that party has the right, authority, or practical ability to obtain the documents.'" *Perez*, 2014 WL 1796661, at *1 (citing *Shell Global Solutions (US) Inc., v. RMS Eng'g, Inc.*, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011)).

9

A party responding to a Rule 34 request must seek information reasonably available from employees, agents, or others subject to his control. For example, in *Perez*, the court held that the State of Texas had control over, and was obligated to produce, legislative materials stored as "ESI contained on official state government servers." 2014 WL 1796661 at *1. In fact, the *Perez* court concluded that Texas had control over, and was obligated to produce, even *private* documents of any legislators represented by the Attorney General's office. *Id.* at *2.

So too here. The State of Michigan has control over, and is obligated to produce, legislator materials stored on state computer servers, even private legislator documents such as those housed on private servers or in personal files, as opposed to on state servers.

**V.    Service of the legislator subpoenas was consistent with Federal Rule 45.**

Tesla's discovery requests were properly served on the State Defendants in their official capacities, and thus on the State itself. Tesla also properly served the third-party document subpoenas on the two legislators. To begin, it is legally irrelevant whether the Michigan Legislature was in "session" at the time of service because, as explained above, state provisions regarding service do not apply in federal-court proceedings. *Gillock*, 445 U.S. at 374. Moreover, the legislators are wrong that service violated Fed. R. Civ. P. 45(b)(1), which requires delivery of a subpoena "to the named person." Tesla's process server delivered the subpoenas to the named legislators' offices. If the legislators would prefer a more public spectacle, Tesla's process servers can re-serve the subpoenas while the legislators are entering or leaving the House or Senate floor, or while conducting a press interview. Given the hassle the State has already put Tesla through, Tesla would hope that all could agree that such measures are unnecessary.

## CONCLUSION

Tesla respectfully requests that this Court (1) deny the legislators' motion, (2) grant Tesla's motions to compel, and (3) order immediate production of the requested documents.

Dated: May 23, 2017

/s/ *John J. Bursch*

John J. Bursch (P57679)
BURSCH LAW PLLC
9339 Cherry Valley Ave SE, #78
Caledonia, Michigan 49316
616.450.4235
jbursch@burschlaw.com

*Counsel for Tesla Motors, Inc.*

Of counsel:
O'MELVENY & MYERS LLP
Daniel M. Petrocelli
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
(310) 553-6700
dpetrocelli@omm.com

Charles C. Lifland
400 South Hope Avenue, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com

Anne E. Huffsmith
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8934
ahuffsmith@omm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2017 I electronically filed the foregoing brief with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document to all counsel of record.

/s/ *John J. Bursch*_____
John J. Bursch (P57679)
BURSCH LAW PLLC
9339 Cherry Valley Ave SE, #78
Caledonia, Michigan 49316
616.450.4235
jbursch@burschlaw.com

*Counsel for Tesla Motors, Inc.*