UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TESLA MOTORS, INC.,

    Plaintiff,

v.

RUTH JOHNSON, et al.,

    Defendants.

_____/

Case No. 1:16-cv-1158

HON. JANET T. NEFF

## ORDER

Plaintiff Tesla Motors, Inc. (Tesla) filed this case challenging a 2014 amendment to Michigan's franchised auto dealer laws—the so-called "Anti-Tesla law," as unconstitutional economic protectionism.  Tesla alleges that the legislation "creates a legal monopoly for franchised dealers, guards Michigan manufacturers from competition, and excludes Tesla from the market" (Second Am. Compl., ECF No. 33 at PageID.281).  The case is before the Court on non-party subpoena recipients Ann Arbor Automotive, Serra Automotive, and Shaheen Chevrolet's ("the Dealers") appeal of a July 27, 2017 Order of the Magistrate Judge (ECF No. 107), which granted in part and denied in part the Dealers' motion to quash subpoena requests and for a protective order.

The matter is thoroughly briefed.[1]  The Court finds no grounds for reversing the well-considered and well-supported decision of the Magistrate Judge.[2]

## I.  Standard of Review

This Court will reverse an order of the Magistrate Judge only where it is shown that the decision is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *see also* FED. R. CIV. P. 72(a); W.D. Mich. LCivR 72.3(a).  "'A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## II.  Analysis

The courts have long-recognized an associational privilege with respect to the compelled disclosure of private information that abridges the right of lawful association in support of common beliefs and advocacy.  *See NAACP v. Ala.*, 357 U.S. 449, 460-63 (1958) (holding that the NAACP did not have to produce its membership lists because production would result in "the likelihood of a substantial restraint" upon the members' exercise of "their right to freedom of association").  Courts in the Sixth Circuit are no exception.  *See Marshall v. Bramer*, 828 F.2d 355, 359 (6th Cir. 1987).  "In certain instances the constitutional right to freedom of association can outweigh the

---

[1] The Dealers have fully briefed the issues on appeal (ECF No. 120), and Tesla has filed a Response (ECF No. 125).  The Court also granted leave for the filing of an *amici curiae* brief and response: "*Amici Curiae* Michigan Chamber of Commerce, Michigan Beer & Wine Wholesalers Association, Michigan Building Trades Council, Michigan Infrastructure and Transportation Association, Michigan Realtors, Michigan Restaurant Association, Michigan Society of Association Executives, Michigan State Medical Society, Michigan Association of Insurance Agents, National Electrical Contractors Association, and Small Business Association of Michigan in Support of Objections to Magistrate Judge's Order Regarding Associational Privilege" (ECF No. 132); Tesla Response (ECF No. 133).

[2] Although the Dealers request oral argument, the Court finds additional argument unnecessary given the extensive briefing and record before the Court.

need for disclosure of information." *Tree of Life Christian Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 WL 831918, at *2 (S.D. Ohio Mar. 12, 2012) (citing *NAACP*, 357 U.S. at 460-67). Following the decision in *NAACP*, the courts have applied the privilege in varying factual contexts, generally balancing the constitutional right of association against the need for the information where the disclosure sought would chill First Amendment rights.

In *Marshall*, 828 F.2d 355, the Sixth Circuit acknowledged the associational privilege but declined to apply it to preclude the release of a membership list by the nonparty Ku Klux Klan member, where there was evidence of the organization's involvement in firebombing the plaintiffs' house, and the information was subject to a protective order to preserve the anonymity of nonparties whose names might appear on the membership list. *Id.* at 357. However, in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), the Ninth Circuit held that the associational privilege precluded the production of ballot proponents' internal campaign communications relating to campaign strategy and messaging to amend the California constitution to ban gay civil marriages. These differing outcomes are at the heart of the Dealers' instant appeal.

In this case, the Dealers sought to quash Tesla's subpoena request Nos. 1, 3 and 6-8, involving communications between the Dealers and their trade group, the Michigan Automobile Dealers Association (MADA), in furtherance of their joint political and commercial interests (Appeal, ECF No. 120 at PageID.1585). Each of the dealers provided testimony that the disclosure of the communications will make him reduce his involvement with, and political activities through, the MADA, and would chill the Dealers' ability to interact with lawmakers and regulators through MADA (*id.* at PageID.1588-1589).

After considering the parties' briefing and hearing argument in two separate hearings, and reviewing the documents *in camera*, the Magistrate Judge rejected the Dealers' assertion of their

First Amendment associational privilege to avoid disclosure.  The Magistrate Judge ordered that the Dealers produce the documents at issue, with applicable exceptions for privilege, sensitive commercial information relating to manufacturers, and publicly available material, as directed by the Court (ECF No. 107).  However, the Magistrate Judge further ordered that all documents being produced by any Dealer shall be designated Third-Party Confidential Materials and be for attorneys' eyes only pursuant to a March 28, 2017 Protective Order (*id.*, citing ECF No. 47).

On appeal, the Dealers assert the following four errors by the Magistrate Judge regarding the associational privilege:

> I.  <u>Legal error</u>: Applied *Marshall* rather than *Perry*, the correct standard when privileged material would be disclosed directly to a commercial or political foe.
>
> II.  <u>Legal error</u>: Retreated from its original finding that the Dealers' established prima-facie applicability of the privilege under *Perry*, and instead overruled the privilege based on its view that the materials are not embarrassing and the case does not involve volatile issues.
>
> III.  <u>Legal error</u>: Relieved Tesla of its burden to overcome the privilege under *Perry's* interest balancing test – especially by proving the material is highly relevant/crucial to its claims.
>
> IV.  <u>Clear error of fact</u>: Even accepting the court's "emotional or volatile issue" standard as correct, it erred in holding that this case does not involve one.

(ECF No. 120 at PageID.1585).  The Court finds no error on the grounds asserted.

The Dealers argue that the Magistrate Judge "erred legally" in disregarding the Ninth Circuit's opinion in *Perry*, 591 F.3d 1147, in favor of the Sixth Circuit's decision in *Marshall*, 828 F.2d 355 (ECF No. 120 at PageID.1585, citing 6/15/17 Hrg. Tr., ECF No. 92 at PageID.1152).  They assert that *Marshall* applies only where the harm to associational rights would come from re-disclosure to the public, in which instance, the harm may be avoided with an appropriate protective order (ECF No. 120 at PageID.1585).  The Dealers argue that this distinction is made clear in two Ohio district court cases: *The Ohio Organizing Collaborative v. Husted*, No. 2:15-

cv-01802, 2015 WL 7008530 (S.D. Ohio Nov. 12, 2015), and *Tree of Life Christian Sch.*, 2012 WL 831918.

The Court does not find the case law so refined or confined. The courts that have applied the associational privilege have necessarily done so in the context of the circumstances presented. Contrary to the Dealers' arguments on appeal, no error exists in the Magistrate Judge's consideration of the unique circumstances in this case, or the balancing of the parties' competing interests.

In *Marshall, supra*, the nonparty Klan member, Alex Young, who was a police officer, was held in contempt for refusing to disclose the Ku Klux Klan membership list. 828 F.2d at 356-57. The court noted that *NAACP*, and subsequent cases relied on by the Klan member, upheld the right of the NAACP to keep its membership lists secure from forced disclosure by government. *Id.* at 359 (citing *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963); *Bates v. City of Little Rock,* 361 U.S. 516 (1960); *NAACP*, 357 U.S. 449). The court noted that in each of those cases, the Supreme Court applied a balancing test, "balanc[ing] the government's professed reasons for requiring the names of group members against the privacy and association rights of the group members and determined that the government's slim basis for seeking disclosure did not outweigh the rights of NAACP members." *Marshall*, 828 F.2d at 359. However, the Sixth Circuit noted "several points of distinction" between the cited cases and nonparty Young's circumstances:

> First, the NAACP cases were about government attempts at public disclosure of individual affiliation. Here, it is not a question of the government seeking to obtain and publicize a list of names, but of a private litigant seeking to view a list for the purpose of deposing individuals who may have relevant information about a pending case. Thus, there is not only a strong interest to justify "disclosure," but the disclosure itself, under the court's protective orders, is not to be public disclosure, but private disclosure for a limited use.

*Marshall*, 828 F.2d at 360.  The court expressed that Young's claim would be more compelling if the case involved public disclosure.  *Id.*  However, given that the protective order prohibited public filing of the membership list, there would not be public disclosure of the members unless they were subsequently named as parties or called as witnesses.  *Id.*  In the absence of evidence that the protective order would be ineffectual, the risk of public disclosure was minimal and the threat to first amendment rights was inconsequential.  *Id.*

The *Marshall* Court held that the district court:  (1) acted reasonably in recognizing the right of the plaintiffs to conduct discovery and ordering that the Ku Klux Klan membership list be turned over; and (2) acted reasonably to protect the right of Klan members to privacy in their associations by ordering that the anonymity of those whose names appear on the list be preserved.  Accordingly, the court's discovery order adequately guarded the rights of those whose names would be revealed, and Young's claim of privilege did not suffice to justify his refusal to comply with the subpoena.  *Id.*

The Sixth Circuit's reasoning in *Marshall* is the fundamental guide for reviewing the Magistrate Judge's discovery rulings in this case.  The Dealers' arguments that this Court should constrain itself to the more specific analysis of the Ninth Circuit in *Perry*, is not persuasive, particularly in light of the different factual context and interests at issue.

In *Perry*, two same-sex couples brought an action against state officials alleging that the ballot proposition ("Proposition 8"), which amended the California Constitution to provide that only marriage between a man and a woman is valid or recognized in California, violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  591 F.3d at 1152.  The official proponents of Proposition 8 intervened to defend the suit.  *Id.*  The plaintiffs served a request for production of documents on the proponents, seeking, among other things, production

of the proponents' internal campaign communications relating to campaign strategy and advertising. *Id.* The proponents objected to disclosure of the documents as barred by the First Amendment. *Id.* The Ninth Circuit reversed the district court's rejection of the proponents' claim of First Amendment privilege. *Id.*

The court observed that the freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment. *Perry*, 591 F.3d at 1152. "'Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association.'" *Id.* at 1159 (quoting *NAACP*, 357 U.S. at 460). In upholding the proponents' First Amendment privilege, the court noted, as in *Marshall*, that its ruling depended on a balancing of interests: "Where, as here, discovery would have the practical effect of discouraging the exercise of First Amendment associational rights, the party seeking such discovery must demonstrate a need for the information sufficient to outweigh the impact on those rights." *Id.* at 1152. The court held that the plaintiffs had not "on the existing record" carried that burden.

The *Perry* Court observed that in the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part framework:

> The party asserting the privilege "must demonstrate ... a 'prima facie showing of arguable first amendment infringement.'" *Brock v. Local 375, Plumbers Int'l Union of Am.,* 860 F.2d 346, 349-50 (9th Cir. 1988) (quoting *United States v. Trader's State Bank,* 695 F.2d 1132, 1133 (9th Cir. 1983) (per curiam)). "This *prima facie* showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* at 350.
> "If appellants can make the necessary *prima facie* showing, the evidentiary burden will then shift to the government ... [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest ... [and] the 'least restrictive means' of obtaining the desired information." *Id.*; see also *Dole v. Serv. Employees Union, AFL–CIO, Local 280,* 950 F.2d 1456,

> 1459-61(9th Cir. 1991) (same). More specifically, the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it. The question is therefore whether the party seeking the discovery "has demonstrated an interest in obtaining the disclosures it seeks ... which is sufficient to justify the deterrent effect ... on the free exercise ... of [the] constitutionally protected right of association." *NAACP,* 357 U.S. at 463, 78 S. Ct. 1163.

*Perry*, 591 F.3d at 1160-61 (footnote omitted). The court noted that a protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect and could weigh against a showing of infringement. *Id.* at 1160 n.6. Various factors may be taken into account in balancing the burdens imposed on individuals and associations against the significance of the interest in disclosure: (1) the importance of the litigation; (2) the centrality of the information to the issues in the case, i.e., relevance of the evidence; (2) the necessity of receiving the information sought; (3) the existence of less intrusive means or other available sources for obtaining the information; (4) the nature of the information; (5) the substantiality of the First Amendment interests at stake. *Id.* at 1061; *Tree of Life Christian Sch.*, 2012 WL 831918, at *3.

Taking a step further, the court expressed a heightened standard to overcome the First Amendment privilege as opposed to the standard for discovery in general:

> Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable.

*Perry*, 591 F.3d at 1161.

The Dealers provide no persuasive argument that the Magistrate Judge erred by failing to apply the specific standards of *Perry* as opposed to *Marshall*. The case decisions, particularly *Marshall*, establish no bright-line delineation between contexts that involve re-disclosure to the

public and those that do not. Nor does the Court perceive any *per se* rules that mandate a result based on the factual context, e.g., volatile or emotional issues, embarrassment to the disclosing party or others, commercial versus political interests at stake. Rather, the fundamental and consistent consideration in the case law is a balancing of the parties' interests, the effect on the rights of association against the need for the disclosure—the exact approach taken by the Magistrate Judge in this case after hearing counsel's positions and citations to authority.

The Magistrate Judge took a hands-on, common-sense approach to resolving the various parties' numerous discovery disputes. She solicited and considered the case authority advocated by the parties and reviewed the documents at issue *in camera* prior to her ruling. Her candid dialogue with counsel, during the three separate hearings[3] on discovery matters, reflect her full consideration of the parties' positions, counsel's arguments, and her appropriate balancing of the competing interests based on the governing law. The Dealers' arguments and contrary characterizations of the Magistrate Judge's rulings are not well-founded.

The Magistrate Judge appropriately distinguished *Perry* and the highly volatile nature of the interests and issues in that case from those here, which are essentially commercial interests[4] (Hrg. Tr. 6/15/17, ECF No. 92 at PageID.1151; Hrg. Tr. 6/16/17, ECF No. 93 at PageID.1218). She also appropriately observed that, despite the volatile interests involved in *Marshall*, the Court ordered the limited disclosure of the membership lists (Hrg. Tr. 6/15/17, ECF No. 92 at PageID.1152). The Magistrate Judge took note of the fact that there is no concern of the identity of the nonparties—the Dealers are each identified as witnesses in this case (*see* Hrg. Tr. 4/18/17,

---

[3] The Magistrate Judge ruled on the instant issue on the second day of the three days of hearings.
[4] Because the Magistrate Judge preliminarily concluded that the Dealers had made a *prima facie* showing of arguable first amendment infringement, the Court considers her ruling under the balancing of the interests (Hrg. Tr. 4/18/17, ECF No. 54 at PageID.564). But viewed either way, the Magistrate Judge's ultimate ruling is well-supported.

ECF No. 54 at PageID.546). But particularly unique to this case is evidence that despite their status as nonparties, the Dealers' are not merely 'bystanders" in this case, given evidence that the automotive dealers themselves drafted the anti-Tesla law in response to "the Tesla situation" (*see* Tesla Ex. A, ECF No. 125-1). Accordingly, the communications sought in discovery are directly and highly relevant to Tesla's claims.

Finally, while the Court has considered the arguments of a general chilling on group association from the *amici curiae* groups, the unique facts of this case raise little concern that any ruling concerning disclosure would apply generally to discovery sought from trade associations, labor organizations or similar entities, in other litigation contexts.

"Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Marshall*, 828 F.2d at 359 (quoting *Bates*, 361 U.S. at 523 (quoting *NAACP*, 357 U.S. at 462) (citations omitted)). Nonetheless, "[t]he purpose of the broad scope of discovery is to permit parties to 'obtain the fullest possible knowledge of the issues and facts before trial.'" *Marshall*, 828 F.2d at 359 (quoting *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)). The Magistrate Judge appropriately balanced these important doctrines and the specific interests underlying each in this case. The Magistrate Judge's ruling permits limited discovery of the Dealers' communications or other information on matters germane to the claims and issues presented and the record before the Court, including evidence of the Dealers' active role in drafting the 2014 "Anti-Tesla Amendment."

### III. Conclusion

The Dealers have shown no clear error in the Magistrate Judge's considerations or conclusion, or that her decision is contrary to the law. Having reviewed the entire evidence, this

Court is not left with the definite and firm conviction that a mistake has been committed. *See Mabry*, 518 F.3d at 449.

Accordingly:

**IT IS HEREBY ORDERED** that non-party subpoena recipients Ann Arbor Automotive, Serra Automotive, and Shaheen Chevrolet's Appeal of the July 27, 2017 Order of the Magistrate Judge (ECF No. 120) is DENIED.


Dated:  December 11, 2017                                          /s/ Janet T. Neff
                                                                                    JANET T. NEFF
                                                                                    United States District Judge