UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

TESLA MOTORS, INC.,

       Plaintiff,

                                                    Hon. Janet T. Neff

v.

                                                    Case No. 1:16-cv-01158

RUTH JOHNSON, et al.,

       Defendants.

_____/

## OPINION AND ORDER

This matter is before the court on Non-Party Kurt Berryman's Motion to Quash Plaintiff Tesla Motors, Inc.'s Subpoena (ECF No. 63). Non-Party Kurt Berryman objects and moves to quash the subpoena issued to him by Plaintiff Tesla Motors, Inc. ("Tesla") pursuant to Federal Rule of Civil Procedure 45 on the grounds that the Subpoena: (i) seeks documents that are irrelevant, voluminous, and impose an impermissible burden and expense on Berryman, a non-party to the litigation; (ii) seeks documents that are equally accessible from other parties or other public resources; and  (iii) seeks privileged information.

## INTRODUCTION AND BACKGROUND

This case is a civil action commenced by Tesla on September 22, 2016, against three Michigan constitutional officers. In summary, Tesla alleges that Michigan's auto-dealer franchise law violates Tesla's constitutional due process, equal protection, and

commerce clause rights. Specifically, according to Tesla, MCL § 445.1574—as amended by 2014 P.A., No. 354—violates its constitutional rights by prohibiting auto-manufacturers such as Tesla from selling vehicles directly to consumers, and similarly, precluding auto-manufacturers such as Tesla from servicing vehicles without the use of franchisees in the State of Michigan.

On May 8, 2017, Tesla served a document subpoena on Kurt Berryman's legal counsel (the "Subpoena"), the Director of Legislative Affairs for Auto Dealers of Michigan, LLC ("ADM").[1] (ECF No. 63-1, PageID.701). On May 22, 2017, Kurt Berryman filed his Motion to Quash Plaintiff Tesla Motors, Inc.'s Subpoena (ECF No. 63). The motion was heard on June 16, 2017 (ECF No. 91), after which the court requested and/or allowed supplemental briefing (including ECF Nos. 95, 96, 99, 100, 101-2, 104 and 106).

## <u>STANDARD</u>

Federal Rule of Civil Procedure 45 governs motions to quash or modify subpoenas. Specifically, the Court must modify or quash a subpoena issued under Rule 45 when that subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iii)-(iv); *see also Wells Fargo Bank, N.A. v. MPC Investors, LLC*, 2010 WL 3259371, at *2 (E.D. Mich. Aug. 2, 2010). "Whether a burden is undue requires weighing 'the likely relevance of the requested material . . . against the burden . . . of

---

[1] Auto Dealers of Michigan, LLC is comprised of a joint membership of Detroit Auto Dealers Association ("DADA") and Michigan Auto Dealers Association ("MADA") (ECF No. 63-2 at ¶ 3, PageID.708). In his capacity as the Director of Legislative Affairs of Auto Dealers of Michigan, LLC, Berryman associates with both entities.

producing the material.'" *U.S. v. Real Prop. Located at 36695 Clarita, Livonia, Michigan 48152*, 2015 WL 6437214, at *1 (E.D. Mich. Oct. 22, 2015) (quoting *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)). "Non-party status is also a factor in the undue-burden analysis." *Id.*

## ANALYSIS

### I.    Irrelevant, Voluminous, Impermissible Burden

A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense" on its recipient.  *Aslani v. Sparrow Health Sys.*, 2009 WL 5892914, at *2 (W..D. Mich. Nov. 30, 2009) (citing Fed. R. Civ. P. 45(c)(1)). Here, the documents are highly relevant and are not particularly voluminous. The court flatly rejects non-party Kurt Berryman's objections and request to quash the subpoena to him on the basis of undue burden. The briefing on this issue has been voluminous and obviously has entailed more burden than producing the documents would have.

### II.    Equally Accessible from Other Parties or Other Public Resources

As discussed above, the burden to produce these documents is not excessive. While the court can see that there may be overlap between the production of certain documents by Kurt Berryman and other entities or persons, it is impracticable to think that all of the documents or information contained in them is available elsewhere.

### III.    Privileges Claimed

#### A.    First Amendment/Associational Privilege

It is also asserted by Kurt Berryman that many of the requests seek privileged information protected by Berryman's First Amendment associational rights.[2] First Amendment associational privilege arose out of a series of cases in which the Supreme Court "upheld the right of the NAACP to keep its membership lists secure from forced disclosure by government." *Marshall v. Bramer*, 828 F.2d 355, 359 (6th Cir. 1987) (citing *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539 (1963); *Bates v. City of Little Rock*, 361 U.S. 516 (1960); *NAACP v. Alabama*, 357 U.S. 449 (1958)).

In *NAACP*, the Court was confronted with evidence "that on past occasions revelation of the identity of [the] rank-and-file members [of the NAACP] ha[d] exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. at 462. The Court thus concluded that forced disclosure of the NAACP's membership was likely to work a "substantial restraint upon the exercise by [the NAACP's] members of their right to freedom of association," and because there was no sufficient justification for disclosure of this information, production of the membership list was shielded by the First Amendment. *Id.*

---

[2] The privilege extends to Berryman as an individual given his association with ADM. *See Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) (holding that the "First Amendment's protection 'extends not only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it.'").

The Supreme Court in *NAACP* balanced the likely impact on First Amendment rights of compelled discovery against the relevance of and need for the information sought. *Marshall*, 828 F.2d at 359. Some courts have formalized this balancing test into a two-step inquiry. First, the party asserting a First Amendment privilege "must make a prima facie showing of a first amendment infringement." *United States v. Comley*, 890 F.2d 539, 544 (1st Cir. 1989). "This prima facie showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). If the objecting party can make that showing, the requesting party then must "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect" on constitutionally protected associational rights. *Id.* at 1161.

"[T]he right to engage in activities protected by the First Amendment implies 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 548 (1987). "Joining organizations that participate in public debate, making contributions to them, and attending their meetings are activities that enjoy substantial First Amendment protection." *In re Asbestos School Litig.*, 46 F.3d 1284, 1294 (3d Cir. 1994) (internal citations omitted). Indeed, the "[f]reedom to engage in

association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998).

Additionally, the First Amendment's associational privilege applies in the context of discovery orders where the disclosure of the requested information will chill associational rights. *See In re Motor Fuel Temp. Sales Litig.*, 707 F. Supp. 2d 1145, 1151-52 (D. Kan. 2010); *Sierra Club v. Union Elec. Co.*, 2015 WL 9583394 (E.D. Mo. Dec. 31, 2015). "Specifically, the Supreme Court has recognized that in the context of discovery, the First Amendment creates a qualified privilege from disclosure of certain associational information." *In re Motor Fuel Temp. Sales Litig.*, 707 F. Supp. 2d at 1152; *see also Perry*, 591 F.3d at 1160 (holding the compelled disclosure of political associations can have a chilling effect, thereby subjecting disclosure to an "exacting scrutiny.").

As discussed above, in evaluating the associational privilege, the party asserting the privilege must make a prima facie showing that the privilege applies. *Perry*, 591 F.3d at 1160. Once a litigant "can make the necessary prima facie showing, the evidentiary burden will then shift to the [requesting party] . . . [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling . . . interest . . . [and] the 'least restrictive means' of obtaining the desired information." *Id.* at 1161. In implementing this standard, courts "'balance the burdens imposed on individuals and associations against the significance of the . . . interest in disclosure to determine whether the interest in disclosure . . . outweighs the harm." *Id.* (internal quotations omitted). "Importantly, the party seeking the discovery must show that the information sought is

highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.* "[T]he second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it." *Id.*

### 1.    Berryman Has Demonstrated A Prima Facie Case

Kurt Berryman has made the prima facie showing necessary to support the First Amendment associational privilege. Specifically, if Berryman is forced to divulge his internal communications with ADM and its members, or communications sent on behalf of ADM to legislators, regulators, and other similarly situated associations and persons, such disclosure could possibly have a chilling effect on Berryman's (and by extension, ADM's) ability to participate in the political process and could chill the free flow of information amongst its members.[3] If made publicly available, the Subpoena could create a roadmap into ADM's legislative interests and strategies, and subject Berryman, ADM, and its members to undue retaliation. Courts nationwide have held that the First

---

[3] Courts have applied the First Amendment's protection to both internal communications as well as communications amongst various groups or persons. *See, e.g.*, *Fed. Election Comm'n v. Machinists Non–Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981) (In a case involving requests for internal communications and communications among various groups, the Court held that releasing the information would have a potential "for chilling the free exercise of political speech and association guarded by the First Amendment."); *see also The Ohio Org. Collaborative v. Husted*, 2015 WL 7008530 (denying motion to compel requests seeking, among other things, "internal and external communications.").

Amendment protects against precisely these harms. *See, e.g., The Ohio Org. Collaborative v. Husted*, 2015 WL 7008530, at *3 (S.D. Ohio Nov. 12, 2015) ("The Court has no doubt that the compelled disclosure of such sensitive information in the context of highly charged litigation involving issues of great political controversy would have a chilling effect on plaintiffs' freedom of association by adversely impacting their ability to organize, promote their message(s), and conduct their affairs."); *Alliance of Auto. Mfrs., Inc. v. Jones*, 2013 WL 4838764, at *4 (M.D. Fla. Sept. 11, 2013) (upholding privilege where disclosure "would chill a willingness to participate in the political process, cause a fear of retaliation, chill the free flow of information, and . . . discourage members of FADA from participation"); *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (holding disclosure of internal planning materials of a political organization would have a chilling effect on the group's First Amendment rights). Berryman's introduction of information by way of affidavit, supplemental affidavit, and second supplemental affidavit clearly demonstrates that this is a topic about which certain members of the public have very strong feelings (ECF Nos. 96, 101-2, 106).

> 2.     Tesla Can Meet Its Burden Necessary To Obtain The Privileged Information

Because Berryman can make the prima facie showing under the First Amendment, the burden shifts to Tesla to demonstrate that the information sought is rationally related to a compelling interest and that its Subpoena is the least restrictive means of obtaining that information. *See Perry*, 591 F.3d at 1161. Factors considered in such an analysis include the litigation's importance, the centrality of the information to the case's issues,

the existence of less intrusive means, and the substantiality of the First Amendment interests. *See id.* Here, Tesla can make such a showing.

First, the case raises constitutional, albeit commercial, issues of great importance. Second, the court is persuaded that the information is highly relevant and critical to issues raised by the parties. Third, the court has no way of knowing whether there exist less intrusive means to obtain the same information. Finally, while the court does not underestimate the First Amendment rights involved, as noted throughout the discovery disputes in this case, it essentially involves commercial and not highly charged political speech. Furthermore, as previously stated, the court is confident that attorneys for the parties will comply with the protective order and the documents will be designated Third-Party Confidential Materials and be for attorneys' eyes only pursuant to the March 28, 2017, Protective Order (ECF No. 47).

Kurt Berryman's supplemental affidavit includes some scathing remarks made by members of the public after the 2014 Amendment at issue in this case. While the court abhors the lack of civility that has occurred particularly in Internet communications in recent years, it is not persuaded that ordering the production of nonprivileged documents pursuant to an attorneys' eyes only protective order will either aggravate or ameliorate those vitriolic individuals.

In *Marshall*, the Sixth Circuit rejected a claim of First Amendment privilege over a list of the members of a Ku Klux Klan group. *Marshall v. Bramer*, 828 F.2d 355, 356 (6th Cir. 1987). Although the court agreed that "exposure of [the members'] Klan affiliation

could have a devastating impact upon some of them," as illustrated by the fact that one member had lost his job upon the disclosure of his membership, the court nonetheless affirmed an order compelling production of the membership list. *Id.* at 360. The court did so in large part in reliance on the protective order issued by the trial court, which prohibited public disclosure of the list of members, rendering "the risk of public disclosure [] minimal" and "the threat to first amendment rights [] inconsequential." *Id.* In short, the protective order in this case is very restrictive, and the court has seen nothing but professional conduct by the parties' attorneys in this case or attorneys representing third-party recipients of subpoenas. It is therefore much more confident than Mr. Berryman that the attorneys' eyes only designation will be protective.

      B.      <u>Attorney-Client or Work Product Privilege</u>

Kurt Berryman's attorneys have submitted 24 documents for in camera review. They claim that responsive documents 7, 14, 16, 17, 18, 27, 32, 33, 34, 35, 48, 170, 171, 173, 228, 231, 236, 244, 373, 374, 375, 387, 388, and 389 seek information protected from disclosure by the attorney-client privilege or work product doctrine. As previously stated, the fact that Mr. Berryman is an attorney does not by any means shield all of the requested documents through an attorney-client privilege. If he was acting as an attorney, and the documents were otherwise privileged, they are privileged. If not, they are not privileged just because he is an attorney.

The court has reviewed each of these documents. It finds that each involves lobbying efforts by Mr. Berryman and his associates on behalf of ADM, DADA and/or

MADA. None of them appear to have anything to do with <u>confidential</u> legal advice to a client. Berryman was warned on at least one occasion, and perhaps more, that his status as an attorney did not cloak his communications with a patina of attorney-client or work product privilege. First of all, the communications are not "private." Second, they do not involve any "legal advice" whatsoever. Rather they concern strategy regarding the legislation which is the subject of this litigation.[4] The court is not suggesting there is anything improper about this conduct but the communications are clearly not privileged.

## **<u>CONCLUSION</u>**

For the reasons discussed above, Non-Party Kurt Berryman's Motion to Quash Plaintiff Tesla Motors, Inc.'s Subpoena (ECF No. 63) is denied. The requested documents shall be produced within 14 days of this order. All documents being produced shall be designated Third-Party Confidential Materials and be for attorneys' eyes only pursuant to the March 28, 2017, Protective Order (ECF No. 47).

Any party wishing to appeal this Order may do so within 14 days after its entry, pursuant to W.D. Mich. LCivR 72.3(a). In the event such an appeal is filed, Kurt Berryman shall have until 14 days after its resolution to produce the above materials.

IT IS SO ORDERED.

Date:  June 6, 2018

/s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge

---

[4] The undersigned expresses no opinion whether this is a proper characterization of the "at issue" legislation.