1

2                    IN THE UNITED STATES DISTRICT COURT

3                   FOR THE WESTERN DISTRICT OF MICHIGAN

4                             SOUTHERN DIVISION

5        TESLA MOTORS, INC.,

6             Plaintiff,                    No.  1:16cv1158

7          vs.

8        RUTH JOHNSON, et al.,

9             Defendants.

10       Before:

11                          THE HONORABLE JANET NEFF,
                            U.S. District Judge
12                          Grand Rapids, Michigan
                            Wednesday, December 12, 2018
13                          Status Conference Proceedings

14       APPEARANCES:

15                   Bursch Law PLLC
                     MR. JOHN J. BURSCH
16                   9339 Cherry Valley SE #78
                     Caledonia, MI 49316
17                   616-450-4235

18                   Wilmer Cutler Pickering Hale & Dorr LLP
                     MR. WILLIAM F. LEE
19                   MS. FELICIA H. ELLSWORTH
                     60 State St.
20                   Boston, MA  02109
                     617-526-6000

21
                     Wilmer Cutler Pickering Hale and Dorr LLP
22                   MR. SETH P. WAXMAN
                     1875 Pennsylvania Avenue, NW
23                   Washington, DC  20006
                     202-663-6800

24
                             On behalf of the Plaintiff;

25

1

2          MR. MATTHEW KENNETH PAYOK
           Michigan Attorney General
3          PO Box 30736
           525 W. Ottawa Street
4          Lansing, MI  48909
           517-373-6434
5
                On behalf of the Defendants.
6

7

8

9

10
           REPORTED BY:  Ms. Kathy Anderson, RPR, FCRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          December 12, 2018

2          PROCEEDINGS, 2:35 p.m.

3          THE LAW CLERK:  All rise.  Court is now in session.

4   Please be seated.

5          THE COURT:  Good afternoon, everybody.

6          MR. BURSCH:  Good afternoon, Your Honor.

7          THE COURT:  This is the date and time set for a status

8   conference in case number 1:16cv1158, Tesla Motors, Inc. versus

9   Johnson, et al.  Counsel, may I please have appearances.

10          MR. BURSCH:  Good afternoon, Your Honor.  John Bursch

11   on behalf of Tesla.  Always good to see you.  Would it be all

12   right if I took just a brief moment and introduced the Wilmer

13   Hale team?  This is the first time that they have had the

14   opportunity to be in your courtroom.

15          THE COURT:  Certainly.

16          MR. BURSCH:  So to my immediate right is Bill Lee.  He

17   is from Boston, Massachusetts, very distinguished trial lawyer.

18   He has tried over 200 cases to verdict including as Apple's

19   lead attorney in the Smart phone litigation.

20          Immediately to his right is Seth Waxman from

21   Washington D.C., former Solicitor General of the United States.

22   He's argued over 80 U.S. Supreme Court cases, also a member of

23   the American College of Trial Lawyers.

24          To his right is Felicia Ellsworth, also from Boston.

25   Extensive experience in both the trial and the appellate courts

1   working around the United States.  I think she's worked in just

2   about every Federal Circuit.

3            Most recently the three of them were the defense team

4   for Harvard in the admissions case that you may have heard

5   about that took place in Boston.

6            THE COURT:  Very interesting.

7            MR. BURSCH:  Fresh off of that.  All happy to be here

8   in Grand Rapids.

9            THE COURT:  Well, welcome to all of you.  Glad to have

10  you here.

11           MR. LEE:  Thank you, Your Honor.

12           MR. PAYOK:  Good afternoon, Your Honor.  Matt Payok

13  here on behalf of the defendants.

14           THE COURT:  Thank you.  You might feel a bit

15  outnumbered there, Mr. Payok.  I don't know.

16           MR. PAYOK:  I have been throughout the case, Your

17  Honor.

18           MR. WAXMAN:  We are rooting for him, Your Honor.

19           THE COURT:  All this fire power.

20           I have, Kathie and I have, Ms. Geiger and I have both

21  spent quite a bit of time preparing for this status conference

22  and I have a whole long list of things that need to be

23  discussed, some of which can be resolved I think.  And the

24  first thing I want to talk to you about are dates.

25           The Daubert hearing that you recommend, you gave me

1    some dates.  The only date that will work for me is March 1.

2    And what I'm going to do there is I'm going to give you two

3    hours, from 9:00 o'clock until 11, and we are going to do it

4    this way.

5         What I'm going to do is have defense counsel introduce

6    Mr. Anderson and provide a brief background information for me:

7    Education, where he's worked and so forth.  Then I'm going to

8    give everybody, each side about 15 minutes to do a brief

9    examination.  And then I'm going to ask him questions.  Because

10   my concern really after reviewing all of this is in terms of

11   the plaintiff's motion to exclude certain parts of his

12   conclusions and so forth, my concern is what data, what

13   evidence, what facts support the conclusions and the findings

14   that he's reached.

15        So it's going to be sort of formulaic.  That's how we

16   are going to lay it out.

17        Now, a couple of other things.  I am going to require

18   that all evidence at trial, and if you're going to have a bunch

19   of evidence at the hearing, at the Daubert hearing, all of it's

20   going to have to be digitized.  We may ask for hard copy, but

21   for purposes of in the courtroom, I really don't like to be

22   pawing through a lot of paper.  So it's all going to have to be

23   digitized.

24        Just kind of, just kind of interesting is the fact

25   that we are going to have a new governor, a new attorney

1    general, and a new secretary of state in a matter of a few

2    weeks going to make any difference in this case, Mr. Bursch?

3         MR. BURSCH:  That's a great question.  May be a better

4    one for the State defendants.  From my experience when I was

5    working with the State, it's difficult I think even for a

6    unified state executive to settle a case that will result in

7    the voiding or the enjoining of a state statute without the

8    legislature also giving their blessing.  It's not impossible.

9    But there are political ramifications to that that I think

10   would make it difficult.

11        That said, we are certainly not opposed to discussions

12   with the State defendants as to whether that might be possible.

13        THE COURT:  Well, I'm also wondering, in addition to

14   that perspective, whether a new, particularly new attorney

15   general, well, actually all three of these positions would have

16   some significant interest in this litigation.  But whether it

17   might signal the possibility for a different strategy or a

18   different approach by the State defendants.

19        MR. PAYOK:  Your Honor, I will definitely, I have had

20   an initial meeting with the AG elect just on general terms with

21   our division.  We haven't had a chance to discuss specific

22   cases yet.  I will definitely explore that possibility with

23   her.  I don't know offhand for sure what the position will be,

24   or I really don't even know what me might be leaning toward.

25   But as Mr. Bursch said, unfortunately the main obstacle I think

1    would be the legislature and that's in the same hands.

2              I think my clients currently would have been amenable

3    to trying to do, at least some of them, trying to do something

4    with it.  But it just hasn't really been anything that they

5    have been able to effectuate.  That may change, and I know that

6    Tesla is still trying to make inroads with the legislature, so

7    possibly something might happen sort of organically on its own

8    there.  It's always a possibility.

9              THE COURT:  Mr. Payok, going forward, you don't have

10   to stand up.  I mean this is going to be fairly informal.  We

11   are just going to have a nice discussion this afternoon.

12             MR. PAYOK:  All right, Your Honor.  Thank you.

13             THE COURT:  A couple of other housekeeping things.

14   You will be required at trial to, before trial, at least seven

15   days before trial, to provide proposed findings of fact and

16   conclusions of law.  There are going to be limitations that

17   will be imposed at trial.  For instance, you're going to have

18   four days to try this case starting on, what did we say,

19   June 10, Kathie?

20             THE LAW CLERK:  Yes.

21             THE COURT:  Starting on June 10th which is a Monday.

22   As we get closer to the trial, and particularly after the

23   Daubert hearing in March, I think I'll have a little better

24   handle on how much time each side will have to present their

25   case.  I have -- I do this in all civil cases.  I provide each

1    side with a specific time limit which I think really helps to

2    focus on what is really needed to prove the various points that

3    counsel wishes to prove.

4           What else?  Oh, I have a question.  Mr. Bursch, you

5    have this third party subpoena out to Mr. O'Connell.  Can you

6    tell me anything about that?  What's that all about?

7           MR. BURSCH:  Actually I'm going to defer that one to

8    Ms. Ellsworth.

9           THE COURT:  Okay, great.

10           MS. ELLSWORTH:  Thank you, Your Honor.  So we

11    subpoenaed Mr. O'Connell who is a lobbyist for GM.  We didn't

12    learn about his potential involvement or his actual involvement

13    in seeking the passage of House Bill 5606 until after Your

14    Honor's ruling went up and down from the Sixth Circuit on some

15    of Mr. Berryman's documents that were withheld as privileged

16    under various theories.  So we learned about his involvement

17    late in the case.  We have received some documents from

18    Mr. O'Connell and his counsel.  We are still negotiating with

19    them, and there are a few that have been withheld as

20    privileged, we believe under the same claim of privilege that

21    Your Honor has already overruled as to some of the other third

22    parties.  So we are still working with them.  We may seek the

23    assistance of Judge Carmody again to review some of those

24    documents in camera to determine whether we should get any of

25    them, and then potentially take a short deposition of

1    Mr. O'Connell.  So far we have been able to work

2    collaboratively with counsel for the third party, but we will

3    let either Judge Carmody or yourself know if we need some

4    intervention.

5        THE COURT:  Okay.  I have to say that the status

6    report that you filed caused me some concern, more than a

7    little bit.  I found it to be somewhat undisciplined and really

8    kind of a scatter gun approach.  And I have some real questions

9    about the plaintiff's, starting at page 5, the plaintiff's

10   evidence and witnesses.  I find a great deal of this

11   presentation at pages 5 and 6 to have some very questionable

12   relevance to the issues that are going to be decided in this

13   case.  For instance, I don't anticipate wanting to hear

14   anything about Tesla's stores, galleries, and how they operate,

15   and how they deliver a better customer experience.  And I will

16   tell Mr. Payok and whoever else is going to try this case on

17   behalf of the defense that I will certainly entertain motions,

18   objections on relevance grounds.  I would say that my red pen

19   didn't quite run out of ink, but I will venture to say that

20   about 70 percent of what is in the paragraphs numbered 1, 2, 3

21   and 4 is simply not relevant to the issues that the plaintiff

22   has pled and that will have to be decided after the trial.

23       So I caution you, and I tell you that one of the

24   reasons that I have reduced the amount of time, I mean you've

25   estimated a great deal more than that, I can't remember what

1    your estimate is, seven days, I think; that's one of the

2    reasons I have already reduced it considerably because I just

3    think that a great deal of what you set out in that document is

4    simply not relevant to my decision in this case.

5            MR. LEE:  Your Honor.

6            THE COURT:  Yes.

7            MR. LEE:  If we might, and I understand this would be

8    briefed later.  And in some sense this relates to the Daubert

9    and Mr. Anderson.  But the justifications that are provided in

10   his findings 1 through 8 for the statute, for the amendment,

11   much of this is responding to the justifications that he has in

12   his findings 1 through 8.  We only challenged four in the

13   Daubert.

14           But, for instance, the manner in which Tesla sells,

15   the benefits of the manner in which Tesla sells directly

16   respond to some of the justifications that the State and he

17   provides for the statute as they interpret it.

18           So I think, I'm hoping, Your Honor, that we will be

19   able to convince you that this is not going to take an

20   inordinate amount of trial time.  But the manner in which Tesla

21   does its business is relevant to not so much the animus of the

22   legislators or the purpose of the legislators, which we will

23   prove independently, but when you go to the justifications the

24   State is providing, much of what's in paragraph 1 as I look at

25   it now and then paragraph 4 are responding to those

1    justifications and rationales for the statute.

2            THE COURT:  Well, all due respect, what does Tesla's

3    mission have to do with any of that?  Or with any of the three

4    claims under the Constitution?

5            MR. LEE:  I think, Your Honor, maybe Tesla's mission

6    all standing alone wouldn't, but if you consider, for instance,

7    I'm now looking at Mr. Anderson's findings 5 and 7, 5 and 8,

8    and the manner in which Tesla does its business, the benefits

9    of doing it in that form, and finding 3, would be a response to

10   that.  So that, for instance -- and, Your Honor, I know we will

11   have a chance to do this more fully.  But on finding 3 when he

12   talks about the benefits of a network of franchise dealers for

13   electric vehicles, the manner in which Tesla does its business,

14   sells its cars, would we think be a response to predicates for

15   his opinion.

16           So I think to answer your question directly, the

17   mission may be something that is just the background of Tesla

18   on what it's trying to do because it explains why we are trying

19   to do it.  The manner in which we do it, which is in paragraph

20   1, is responding to the rationales for the statute as best we

21   can.

22           THE COURT:  I'm skeptical.  And I'm doubly skeptical

23   not just because of my own review of this, but in reading the

24   case law, both a couple of Supreme Court cases, the Texas case,

25   the Fifth Circuit case, all of them reinforce my own skepticism

1    about the relevance of much of this proposed testimony and

2    evidence.

3         I understand, at least I think I do, that this trial

4    is just the opening round of this litigation, particularly for

5    Tesla.  But I also believe strongly in confining any trial to

6    those matters that are truly necessary for the Court to decide.

7    And particularly in a bench trial where we don't have the

8    necessity of persuading a jury, of putting in a lot of things

9    that aren't, are maybe tangential but are important for a jury

10   to fully understand what the parties are trying to prove.  But

11   in a bench trial where you aren't posturing for a jury, you

12   just really need to lay out what I need to know in order to

13   make these constitutional decisions.  And, you know, quite

14   frankly, again, I realize that, you know, this isn't going to

15   stop here, but it really does strike me as I spent so much time

16   on this stuff that the remedy here, and Mr. Payok mentioned it,

17   the remedy here probably is legislation.

18        We know that the Utah case went against you, but then

19   they changed the law.  And that ultimately, in my view anyway,

20   is going to be where this whole issue is resolved regardless of

21   how any of us might evaluate it on a personal basis.  It is

22   just not a particularly in my view justiciable dispute in the

23   end.

24        MR. PAYOK:  Your Honor, I have a couple things I might

25   be able to address as far as that.  The State is actually or

1    State defendants, the defendants, are actually considering, we

2    are trying to determine whether we can resolve the Daubert

3    issue by withdrawing Mr. Anderson.  I will know the answer to

4    that by the end of the month.

5              THE COURT:  Okay.

6              MR. PAYOK:  And even if we offer him, he will not

7    testify as to 95 percent of what's in the report.  He would be

8    a very, very narrow testimony limited to identifying legitimate

9    State interests.  And I think we have got enough of that

10   actually from admissions regarding from one of Tesla's experts

11   that we don't need him necessarily, but I will know the answer

12   to that by the end of the month and I will let everybody know.

13             THE COURT:  Well, I think what I'm --  there's going

14   to be an order come out of this hearing today, but I think what

15   I want then, Mr. Payok, is for you to file a pleading that sets

16   that out in specific terms, and that invites the plaintiff to

17   advise whether that is sufficient for it to withdraw its

18   objection to Mr. Anderson.  Because that would, that would

19   certainly clarify a lot of things, I think.

20             MR. PAYOK:  Yes, Your Honor.

21             THE COURT:  Okay.

22             MR. WAXMAN:  Your Honor, if I can just overcome my

23   unease talking to a judge sitting down in court.

24             THE COURT:  You know, when I first went on the bench I

25   had that same problem.  I just couldn't do it.  But --

1          MR. WAXMAN:  But I will see if I can talk and sit at

2     the same time.

3          THE COURT:  Okay.

4          MR. WAXMAN:  I appreciate, as Mr. Lee said, that we

5     will have a chance to brief some of the issues that you've

6     articulated here.  But I do want to say that we would

7     respectfully take significant exception to any conclusion that

8     the issues that are raised in the complaint are, however

9     desirable it would be for there to be legislative solution, are

10    not justiciable.

11         THE COURT:  I probably misspoke when I said that,

12    Mr. Waxman.  I think obviously they are.  You have teed up, the

13    plaintiff has teed up these issues for a decision by this

14    Court.  And you'll get one, I promise.  But I just, my thought

15    is that the more likely remedy for the plaintiffs in this case,

16    plaintiff in this case, is legislative as opposed to judicial.

17         MR. WAXMAN:  I mean given the fact that we have raised

18    constitutional challenges to existing legislation, we certainly

19    agree that the most expeditious way to resolve this would be if

20    the legislature were to act and therefore remove the

21    constitutional challenges.  And I do, I do think, you know, it

22    will be interesting and maybe to some extent our proposed proof

23    will, will be significantly changed based on whatever

24    representations the State makes about its own expert.

25         I don't think I understood Your Honor's skepticism

1    about the types of evidence we wanted to introduce to go to our
2    required proof of intent, and purpose, and things like that of
3    the legislation as to which we -- I mean we have to have a
4    trial.  And it's our burden to put on, to carry our burden to
5    show that this legislation was motivated by animus against
6    Tesla and against out of state auto manufacturers.  I think I
7    understood Your Honor's skepticism to be, to go to the proof
8    that we anticipate putting on in order to rebut the, the six
9    rational bases that the State has articulated support this
10   legislation.  And I know Your Honor is aware that the law in
11   this circuit is particularly clear that economic protectionism
12   is not a rational basis for purposes of saving a law, either
13   under the Fourteenth Amendment or the Dormant Commerce Clause.

14           And it will be our burden to show that there is in
15   fact no rational basis for this legislative prohibition.  And a
16   significant part of our order of proof is going to be to try
17   and prove that.  I mean we will lay this out, you know, in
18   papers for Your Honor.

19           But I did, I think it's very justiciable and we are
20   very focused on the governing case law that economic
21   protectionism is not a rational basis.

22           THE COURT:  Well, I think it's also true, I don't want
23   to get into the merits which we are doing anyway, but I think
24   it's also true, though, that a lot of the case law seems to
25   make it clear that in putting forth other rational bases, the

1    defendants have a lot of latitude, at least that's the way I

2    read the cases.  That the courts have been quite deferential to

3    those other kinds of excuses, if you will, for the legislation.

4    Which seems on its face to be what the plaintiff says it is.

5    But when they say other things, the courts have been pretty

6    deferential in saying, yeah, well, maybe.  You know, I admit

7    it's a very, it's an interesting case.  It's kind of a squishy

8    one too I think.

9         MR. WAXMAN:  I mean, look, there is no doubt that, you

10   know, for those of us who on occasion are in the business of

11   challenging the constitutionality of either federal or state

12   legislation, that the rational basis standard of scrutiny

13   isn't, you know, the particular level of scrutiny that we

14   otherwise would have hoped for.  And it's quite challenging.

15        What I understand it means, and I'm not planning to

16   drag Your Honor through an oral argument at this point; I'm

17   sure we will have an opportunity to talk about this later on.

18        THE COURT:  I'm sure of it.

19        MR. WAXMAN:  What it means is that the State doesn't

20   have to prove that its legislators had a particular purpose in

21   mind at the time they enacted the legislation.  But the avowed

22   purpose still must be rational.  And it is certainly our

23   burden; if they say no there is a rational basis that it does

24   X, Y and Z, you have to accept that unless we carry our burden

25   to show that that is in fact not a rational basis, and that the

1    only real rational basis for this legislation is to protect our

2    auto dealers, our franchised auto dealers and/or our auto

3    manufacturers.

4         And that's why I think we anticipate needing this time

5    in order to have our experts and some of our fact witnesses

6    explain that.

7         But I'll, I'll now stop talking.  I've said 5,000 more

8    words than I expected to say today.

9         THE COURT:  Thank you, Mr. Waxman.  Okay.  Moving on.

10   Amicus briefs.  I'm skeptical of amicus briefs.  How many are

11   you thinking about asking for?  And who are they?

12        MS. ELLSWORTH:  Your Honor, if I may, Felicia

13   Ellsworth.  There are a few different organizations that have

14   expressed some interest in weighing in in this case or in front

15   of Your Honor.  I think no more than three that we have spoken

16   with that might be interested in providing information to you

17   that you may or may not find of use.  But we had proposed that

18   that would be on the same schedule as the party's pretrial

19   brief which I now understand to be, to accompany proposed

20   findings and conclusions.

21        THE COURT:  Yes.

22        MS. ELLSWORTH:  And to be of some assistance to Your

23   Honor about some interests in the State of Michigan and

24   elsewhere that might be implicated by this, this case and this

25   challenge.

1          THE COURT:  Mr. Payok, is the State going to counter

2     any of this with its own amicus briefing?

3          MR. PAYOK:  No, Your Honor.  We don't intend to.  We

4     can't stop the Auto Dealers Association from filing something.

5     But it's not something --

6          THE COURT:  Yeah, you can, I can.

7          MR. PAYOK:  Yes.  And honestly, we don't feel the need

8     for amicus here.

9          THE COURT:  Okay.  I'll tell you honestly, I don't

10    either at this point.  I mean it's fairly early, but it really

11    seems to me that we are dealing with fairly narrow issues and

12    that it's not likely that we are going to have a need for

13    amicus briefing.  But we will see as we go along when you ask

14    for permission.

15         Motions in limine.  Tell me what you're thinking about

16    there.

17         MR. PAYOK:  Your Honor, my hope was to before trial

18    address some of the issues that Your Honor has brought up here

19    already.  What I was hoping to do in order to get us to a

20    narrower point for trial, there's been pretty broad discovery.

21    And so I was hoping, as we indicated in the language, for the

22    parties to file a proposed appendix in a way, and then instead

23    of me filing a motion in limine saying I would like to exclude

24    this issue and its vague parameters, we could file a motion

25    saying we would like to exclude Plaintiff's Proposed Exhibits

1, 75, 210, and give you something very narrow to focus on.
But our motion, or motions in limine would be exactly what Your
Honor has brought up already here today.  We think that there's
a lot of information here, the majority of which isn't relevant
under the case law to the constitutional issue and whether
there's a legitimate State interest or rational basis.  So we
would --  for instance, the testimony of an individual
legislator, the testimony of an individual lobbyist, or an
individual state official can't be viewed as the intent of the
legislature or, you know, any reasonable substitute for that.
So that's the type of, those are the types of issues that we
look to address through a motion in limine.

THE COURT:  Well, when you say Exhibit 210 that kind
of gives me goose bumps, Mr. Payok.  But, again, you know, I
think in a case, the cases like this that I have had that have
really broad implications seem to, and I was a lawyer once for
quite a while, you get the almost irresistible urge to throw
everything you can think of at the judge.  And all that does in
my view from the judge's perspective is make it difficult to
sort through to find the real crux of the issues that are being
raised.  And so it really behooves counsel to take a very close
look at all of this proposed information to make sure that it
does have some reasonable connection, reasonable relevance to
where you want me to come out.

I can tell you that Kathie and I are both really Type

1   A personalities.  We feel some obligation to read all the stuff

2   that you send us.  And if you send me, you know, an exhibit

3   book that's six inches thick, it's going to be really not very

4   pleasant for me or my husband.

5           So I just ask you to be really vigilant in determining

6   what you think is on point with the issues that you have

7   raised, and to overcome that urge to file everything that you

8   can think of.  It just really in the end doesn't help.  I think

9   in the end it serves as a matter for confusion more than

10  anything.

11          What else, Kathie?  Do you have anything else?

12          THE LAW CLERK:  We will be issuing some sort of trial

13  parameters order, whether it's combined with this or, there

14  will be an order from today's status conference, but there also

15  may be a trial prep order.

16          THE COURT:  Yes, there will be a trial preparation

17  order as we get much closer to trial.  But there will be an

18  order that emanates from this hearing as well.

19          Anything else that I have left out, forgotten?

20          THE LAW CLERK:  I think that's it.

21          THE COURT:  Now you guys get to talk.  What do you

22  want to tell me?

23          MR. BURSCH:  Nothing further.

24          THE COURT:  Okay.  Mr. Payok.

25          MR. PAYOK:  I think we have addressed it all, Your

1    Honor.

2              THE COURT:  Okay, great.  Well, interesting case.  One

3    of the greatest joys of being a United States District Judge

4    that one is never bored.  I can honestly tell you that in

5    11 years on this bench I have not been bored once because the

6    cases are so interesting, and counsel are so capable and well

7    prepared.  So I appreciate your efforts.  And we will look

8    forward to bringing this case home in the middle of 2019.

9    Okay.  Thank you all very much.  Thank you.  We are adjourned.

10             THE LAW CLERK:  All rise.  Court is adjourned.

11             (Proceedings concluded, 3:09 p.m.)

REPORTER'S CERTIFICATE


        I, Kathy J. Anderson, Official Court Reporter for the

United States District Court for the Western District of

Michigan, appointed pursuant to the provisions of Title 28,

United States Code, Section 753, do hereby certify that the

foregoing is a full, true and correct transcript of the

proceedings had in the within entitled and numbered cause on

the date hereinbefore set forth; and I do further certify that

the foregoing transcript has been prepared by me or under my

direction.




                    /s/ Kathy J. Anderson

                    Kathy J. Anderson, RPR, FCRR

                    U.S. District Court Reporter

                    412 Federal Building

                    Grand Rapids, Michigan  49503